UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ALLIED WORLD NATIONAL ASSURANCE COMPANY, § § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 4:21-cv-0431-O |
| § | |
| OLD REPUBLIC GENERAL INSURANCE CORPORATION, § § § § | |
| Defendants. § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Old Republic General Insurance Corporation's Motion for Partial Summary Judgment (ECF Nos. 16–19, 28), filed September 9, 2021; Allied World National Assurance Company's Response (ECF No. 27, 29), filed October 21; Old Republic's Reply (ECF No. 33) filed November 5; Allied World's Cross-Motion for Partial Summary Judgment (ECF Nos. 22–24, 26), filed September 28; Old Republic's Response (ECF No. 30), filed October 21; and Allied World's Reply (ECF No. 34), filed November 5. The Court **GRANTS** partial summary judgment in favor of Old Republic.

I.   BACKGROUND

On September 20, 2016, the Tarrant Regional Water District hired IPL Partners to perform construction work on an integrated pipeline in Venus, Texas. *See* Compl. 3–4, ECF No. 1; Answer 2–3, ECF No. 7. IPL in turn hired Oscar Renda Contracting, Inc. as a contractor to perform excavation and pipelaying. *See* Def.'s Am. App. 124, ECF No. 28. Nabor Machuca-Mercado worked as a laborer for Oscar Renda Contracting. *See id.* One day, while working on the pipeline project, Machuco-Mercado disappeared from the site for several minutes. *See id.* at 124–25; Compl. 3–4, ECF No. 1; Answer 2–3, ECF No. 7. When the other workers searched the

1

site, they found Machuco-Mercado in a trench, buried up to his head in pea gravel. *See* Def.'s Am. App. 125, ECF No. 28. Machuco-Mercado had suffocated to death. *See id.* Machuco-Mercado's children sued Oscar Renda Contracting in state court for negligence.[1] *See id.* at 122–33. They sought $10 million in damages for wrongful death and survival, plus an additional $10 million in punitive damages. *Id.* at 133–34.

Old Republic General Insurance Corporation had issued the Tarrant Regional Water District a Commercial General Liability ("CGL") policy. Compl. 5, ECF No. 1; Answer 3, ECF No. 7. The policy covers up to $2 million for "each occurrence" and $4 million for "general aggregate." Pl.'s Am. App. 27, ECF No. 26. Old Republic also issued Employers' Liability ("EL") policies to both the Water District and Oscar Renda Contracting. Compl. 5, ECF No. 1; Answer 3, ECF No. 7. Each of those policies covered up to $1 million for each accident. Compl. 5; Answer 3. Finally, Allied World National Assurance Company issued the Tarrant Regional Water District a form excess liability policy. Compl. 5; Answer 3.

Allied World sued Old Republic and Oscar Renda Contracting in this Court on March 12, 2021. *See* Compl., ECF No. 1. Allied World seeks a declaratory judgment that: (1) Old Republic owes a duty to defend Oscar Renda Contracting in the underlying lawsuit under the CGL Policy; (2) Old Republic owes a duty to indemnify Oscar Renda Contracting for damages awarded or amounts paid to settle the underlying lawsuit up to the $2 million per "occurrence" limit of the CGL Policy; and (3) Allied World owes no indemnity obligation under the Allied World excess liability policy until the Old Republic CGL Policy's $2 million per "occurrence" limits exhaust. *Id.* at 12. On June 8, Allied World dismissed its claims against Oscar Renda Contracting, leaving Old Republic as the only defendant. *See* Notice of Dismissal, ECF No. 10.

---

[1] *Valera v. Oscar Renda Contracting, Inc.*, Case No. 18-8351-431 (431st Dist. Ct., Denton County, TX).

Old Republic filed its answer and added a counterclaim against Allied World. *See* Answer, ECF No. 7. Old Republic seeks a declaratory judgment that (1) it owes no duty to defend Oscar Renda Contracting in the underlying lawsuit under the Old Republic CGL Policy; (2) it owes no duty to indemnify Oscar Renda Contracting in the underlying lawsuit under the Old Republic CGL Policy; (3) only the Oscar Renda Contracting EL Policy covers claims against Oscar Renda Contracting in the underlying lawsuit; and (4) the Allied World excess liability policy affords excess coverage to Oscar Renda Contracting for the claims asserted against Oscar Renda Contracting in the underlying lawsuit once the $1 million primary limits of coverage under the EL Policy have been exhausted. *Id.* at 14–15.

On September 9, Old Republic moved for partial summary judgment, arguing the Court should dismiss Allied World's claims for declaratory relief. *See* Def.'s Mot. for Summ. J., ECF No. 16. On September 28, Allied World cross-moved for partial summary judgment, arguing the Court should grant summary judgment on Count I of its complaint and dismiss Count I of Old Republic's counterclaim. *See* Pl.'s Cross Mot. for Summ. J., ECF No. 22. The parties exchanged responses and replies, and the motions are now ripe for the Court's review.

## II.   LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, 'which are designed to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

The court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

### B. Insurance Policy Interpretation

Under Texas law, courts generally construe insurance policies as they would any other contract. *Don's Bldg. Supply, Inc. v. OneBeacon Ins.*, 267 S.W.3d 20, 23 (Tex. 2008). Terms receive their plain, ordinary meaning, unless the policy itself shows that the parties intended the terms to have a different, technical meaning. *Id.* When terms are defined in an insurance policy, those definitions control. *See id.* at 24. Courts must interpret the policy as a whole, and "[n]o one phrase, sentence, or section of the policy should be isolated from its setting and considered apart from the other provisions." *Id.* (cleaned up). If there is only one reasonable construction of the policy terms, the terms are enforced as written. *Id.* If, however, an insurance policy is ambiguous, courts construe the policy in favor of coverage. *Id.*

### III. ANALYSIS

The parties dispute the amount Old Republic must cover for the underlying suit against Oscar Renda Contracting. Old Republic argues it must cover up to $1 Million. Allied World says

Old Republic must cover up to $2 million. The answer turns on whether Old Republic owes a duty to defend under the CGL policy ($2 million cap), or the EL policy ($1 million cap).

Under the CGL policy, "insureds" include "employees," "but only for acts within the scope of their employment . . . or while performing duties related to the conduct of your business." Def.'s Am. App. 29, ECF No. 28. The policy then qualifies that provision:

> However, none of these "employees" . . . are insureds for: "Bodily injury" or "personal and advertising injury": (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business.

*Id.* Old Republic amended the policy, replacing paragraph (a) of that provision with: "(a) To you, to your partners or members (if you are a partnership or joint venture)." *Id.* at 60.

The CGL policy excludes coverage for "bodily injury" to an "employee" of the insured "arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business." *Id.* at 21. Old Republic amended that part of the policy, too. The change read that, "[w]ith respect to Supervisory personnel," section I.A.2.e of the policy "is amended to include: 'This paragraph e does not apply to "bodily injury" to an "employee" when such "bodily injury" is caused by another "employee."'" *Id.* at 60.

The parties agree that Oscar Renda Contracting is a "named insured" under the CGL policy. *See* Compl. 11, ECF No. 1; Answer 8, ECF No. 7. They also agree that Machuca-Mercado was an "employee" under the policy, and that he suffered "bodily injury" within the scope of his employment. *See* Compl. 11; Answer 8; Pl.'s Summ. J. Br. 11–12, ECF No. 23; Def.'s Resp. 10, ECF No. 30. The original policy excluded coverage for such injuries. Old Republic says the underlying lawsuit falls squarely in that exclusion, so it owes no duty to defend under the CGL policy. Allied World responds that the exclusion does not apply here

because the amendment specifically says the exclusion "does not apply to 'bodily injury' to an 'employee' when such 'bodily injury' is caused by another 'employee.'" Def.'s Am. App. 60, ECF No. 28.

Old Republic has the better reading of the policy language. The amendment removing the exclusion for bodily injury to an employee caused by another employee applies only "[w]ith respect to Supervisory personnel."[2] *Id.* The amendment otherwise left the exclusion in place. Allied World does not allege that either Machuca-Mercado or the worker who buried him in gravel were supervisory personnel. And while Oscar Renda Contracting *employs* supervisory personnel, it is not *itself* "supervisory personnel." In short, the underlying lawsuit does not concern supervisory personnel, so the amendment is inapplicable in this case. That means that Machuca-Mercado's injuries fall under the exclusion for "bodily injury" to an "employee" within the scope of his employment. *Id.* at 21.

The second part of the amendment confirms this reading of the policy. The original policy provided that employees were not "insureds" for bodily injury:

> (a) To you, to your partners or members (if you are a partnership or joint venture), *to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the*

---

[2] The full, unmodified text of the amendment reads:

> With respect to Supervisory personnel, SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, e. Employer's Liability, is amended to Include:
>
>> This paragraph e does not apply to "bodily injury" to an "employee" when such "bodily injury" is caused by another "employee."
>
> SECTION II -WHO IS AN INSURED, 2., a., (1), (a), is amended to read:
>
>> (a) To you, to your partners or members (if you are a partnership or joint venture);

Def.'s Am. App. 60, ECF No. 28.

> *conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business.*

*Id.* at 29 (emphasis added). The amendment removed the italicized language. *See id.* at 60. That means that employees, including supervisory personnel, are now "insureds" for bodily injuries they cause to fellow employees. The exclusion then comes into play, removing liability for an employee's bodily injury occurring in the scope of his employment. *Id.* at 21. But that exclusion does not apply "[w]ith respect to Supervisory personnel." *Id.* at 60. The result of the amendment is that if a supervisor allegedly contributes to a fellow employee's injury, the supervisor qualifies as an insured and the CGL policy covers liability for that injury. Allied World offers several counterarguments, but none are persuasive.

*First*, Allied World argues that Old Republic reads the amendment too narrowly. According to Allied World, "[a] more reasonable construction of the prefatory phrase 'with respect to supervisory personnel' is that the amended Employer's Liability exclusion does not apply to claims against Oscar Renda alleging supervisory-level negligence." Pl.'s Resp. 11, ECF No. 27. Because the underlying lawsuit alleges that Oscar Renda Contracting failed to properly hire, train, and supervise its workers, Allied World says the amendment applies. *Id.* The most obvious problem with that interpretation is that the amendment does not mention supervisory-level negligence. Elsewhere, however, the policy uses precisely that language. For example, the policy excludes liability for alcohol-related bodily injury "even if the claims against any insured allege negligence or other wrongdoing in: (a) The supervision, hiring, employment, training or monitoring of others by that insured." Def.'s Am. App. 21, ECF No. 28. Similar language appearing throughout the policy and amendments demonstrates that if the parties had wanted to include claims of supervisory-level negligence, they knew how to do so. That they did not indicates the amendment should be read plainly, to apply to "supervisory *personnel*."

7

*Second*, Allied World argues that the liability exclusion applies to employers, not individuals. It says that "the Employer's Liability Exclusion does not apply to supervisory employees in the first instance." Pl.'s Resp. 13, ECF No. 27. Allied World does not justify that claim, and the plain language of the policy rebuts it. Under the exclusion, the policy "does not apply to . . . 'bodily injury' to . . . [a]n 'employee' of the insured" occurring within the scope of his employment. Def.'s Am. App. 21, ECF No. 28. The exclusion does not distinguish among types of employees. But the amendment does. The amendment provides that the exclusion does not apply in certain circumstances "[w]ith respect to Supervisory personnel." *Id.* at 60. If Allied World were correct that the exclusion does not apply to supervisory employees in the first instance, then the amendment carving out supervisory employees from the exclusion is superfluous. "An interpretation that gives each word meaning is preferable to one that renders one surplusage." *U.S. Metals, Inc. v. Liberty Mut. Grp.*, 490 S.W.3d 20, 23–24 (Tex. 2015). The more reasonable interpretation is that the exclusion removes liability for an employee's bodily injury occurring in the scope of his employment, except in certain circumstances "[w]ith respect to Supervisory personnel." Def.'s Am. App. 60, ECF No. 28.

*Third*, Allied World argues that a supervisory employee is not "an insured" under the policy. *See* Pl.'s Resp. 13–14, ECF No. 27. That argument also conflicts with the plain language of the policy. Those who are "insured" under the policy include "volunteer workers" performing business-related duties, and "employees" performing business-related duties or acts within the scope of their employment, among many others. Def.'s Am. App. 29, ECF No. 28. The policy does not exclude supervisory employees, who are (self-evidently) employees. The policy does provide slightly different coverage for "managers" and "executive officers." *See* Def.'s Am. App. 29, ECF No. 28. Arguably, "supervisory personnel" includes managers and executive

8

officers, or vice versa. But the Court need not address that interpretation because (1) neither party raises it and (2) the underlying suit is not against managers or executive officers. Regardless, the policy confirms that "employee" is an umbrella term encompassing managers, executive officers, and supervisory personnel, all of whom qualify as "an insured."

In sum, the CGL policy does not cover the underlying lawsuit. The lawsuit alleges that an employee acting in the scope of his employment caused Machuca-Mercado's death. It names Oscar Renda Contracting as the sole defendant. But the CGL policy excludes coverage for such injuries. Old Republic therefore owes no duty to defend Oscar Renda Contracting under the CGL policy. Old Republic might owe a duty to defend under the EL policy, but that issue is not before the Court.

## IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Old Republic's Motion for Partial Summary Judgment (ECF Nos. 16) and **DENIES** Allied World's Cross-Motion for Partial Summary Judgment (ECF No. 22). Accordingly, the Court **DISMISSES** Counts I and II of Allied World's Complaint.

**SO ORDERED** on this **7th day** of **January, 2022**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE